# KRAMER LEVIN NAFTALIS & FRANKEL LLP

BARRY H. BERKE
PARTNER
PHONE 212-715-7560
FAX 212-715-7660
BBERKE@KRAMERLEVIN.COM

May 30, 2017

BY ECF AND HAND DELIVERY TO JUDGE COTE
AND CHIEF JUDGE McMAHON

Hon. Denise L. Cote
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Hon. Colleen McMahon
Chief United States District Judge
Assignment Committee for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:    *United States v. David Blaszczak, Theodore Huber,*
       *Robert Olan and Christopher Worrall*, **No. 17 Cr. 308**
       **(DLC)**

Dear Judge Cote and Chief Judge McMahon:

We submit this letter on behalf of Theodore Huber and Robert Olan, defendants in the above-captioned matter, to raise concerns that the government has improperly circumvented the Southern District of New York's case assignment system by proceeding against David Blaszczak, Mr. Huber, Mr. Olan and Christopher Worrall (collectively, the "Indicted Defendants") by superseding indictment.[1] We also are submitting this application to the Assignment Committee for the Southern District of New York (the "Assignment Committee"), Chaired by the Chief Judge, which we understand is the proper protocol under Rule 2 of the Rules for the Division of Business Among District Judges ("Rules for the Division of

---

[1] We understand that Mr. Blaszczak and Mr. Worrall are currently unrepresented and in the process of obtaining new counsel.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 2

Business"). *See id.* ("The assignment committee shall supervise and rule upon all issues relating to assignments under this system . . . .").[2]  For the reasons described below, we respectfully request that the Indicted Defendants' case be submitted for random assignment from the criminal wheel.

The government proceeded against the Indicted Defendants by superseding the information recently filed against Jordan Fogel, the sole defendant in the underlying case and a government cooperator who has pled guilty – so there is no possibility of a joint trial.  By proceeding in this manner in this and other recent cases, the government has been able to control the judge-selection process by deciding whether to supersede the cooperator's information or file a new indictment after learning the judge assigned to the cooperator's case.  Simply put, the government's actions have improperly allowed it alone to determine the assignment process for this case, notwithstanding the rules of this District, the Second Circuit's recent disapproval of the government's strategic use of superseding indictments, basic principles of fairness and the requirements of due process; and cast the proceedings under a shadow of judge-shopping.

1.    Background

The government initially charged Jordan Fogel, a government cooperator, by information on May 19, 2017, and the case was assigned to this Court.  Mr. Fogel pled guilty to all six counts in the information the same day before Magistrate Judge Gorenstein, and according to the docket, has not appeared before this Court.

On May 24, 2017, the government unsealed an indictment against the Indicted Defendants (obtained the prior day) that it styled as a superseding indictment, bringing eighteen counts against the Indicted Defendants.  While some of the charges relate to the same conduct alleged in the prior information against Mr. Fogel, there are significant differences between the cases, including a host of charges unique to the defendants in the "superseding" indictment, particularly with respect to Messrs. Blaszczak and Worrall.  In fact, some of the charges against Mr. Blaszczak relate to alleged insider trading committed by Christopher Plaford, who currently has a case pending before Judge Abrams (*United States v. Plaford*, No. 16-cr-400 (RA)), who has testified in another case before Judge Rakoff (*United States v. Lumiere*, No. 16-cr-483 (JSR)), and who we presume will be a witness in this case. (*See Lumiere* 1/17/207 Tr. at 640, 649 (Plaford testified that he traded after receiving information from David Blaszczak)).

---

[2] *See United States v. Bailey*, No. S2 97 CR. 269 (DLC), 1998 WL 748308 (S.D.N.Y. Oct. 20, 1998) (this Court referred to the Assignment Committee the question of whether to retain a case where the sole defendant was charged in the first instance by superseding indictment after the original defendant pled guilty).

KL3 3125902.8

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 3

>  2.    The Government's Conduct Violates the Letter and Spirit of the District's Rules, Due Process and Basic Fairness, and Creates the Appearance of Impropriety

The government cannot justify bringing the charges against the Indicted Defendants in a superseding indictment by claiming that the case is related to the government's prior and now-resolved case against Mr. Fogel. Under Rule 13(b) of the Rules for the Division of Business, **"[c]riminal cases are not treated as related to each other unless a motion is granted for a joint trial.**" (emphasis added). *See also* Order M10-468, *In re Rule 13(b) of the Rules for the Division of Business Among Judges*, No. 11 Mc. 438 (S.D.N.Y. Dec. 20, 2011) (preserving general rule that "[c]riminal cases are not treated as related to civil cases or vice versa" and striking former exception that had permitted relation of "criminal cases and SEC enforcement actions arising from the same alleged fraud").

This case is thus properly governed by Rule 6(b), which provides for the random assignment of all criminal cases. While Rule 6(e) carves out a limited exception to permit assignment to the same judge when the government proceeds by superseding indictment or information, that exception flows from the common-sense recognition that superseding indictments carry the implicit potential for a "joint trial," which both Rule 13(b) and Rule 6(e) recognize as sufficient justification for a common judge despite the District's rejection of a related case rule for criminal cases. But Rule 6(e) cannot be abused to circumvent the operation of Rule 13(b). Where, as here, the indictment charging the Indicted Defendants is "superseding" only in the sense that the government styled it in that manner,[3] and there is no possibility of a joint trial because the prior case has been resolved, the government's new charges must properly be subject to Rule 6(b)'s random assignment procedure, especially since the government otherwise has the ability to manipulate the assignment process under these circumstances simply by deciding whether to supersede the cooperator's information or file a new indictment.

As the Second Circuit has recognized, "a criminal justice system in which the prosecutor alone is able to select the judge of his choice to preside at trial, even in limited types of cases, raises serious concerns about the appearance of partiality, irrespective of the motives of

---

[3]    While the government has called the instrument charging the Indicted Defendants a "superseding indictment," it is that in name only. The indictment does not "supersede" anything; these defendants had not previously been charged, and the charges against Mr. Fogel in the prior information are entirely unchanged. To "supersede" is to "annul, make void, or repeal by taking the place of." *See* Black's Law Dictionary 1576 (9th ed. 2009). Following this definition, an indictment is properly classified as "superseding" when it "supplants a valid, pending indictment." *United States v. Garcia*, 268 F.3d 407, 410 n.1 (6th Cir. 2001) (noting that an indictment filed after reversal of an earlier indictment and conviction is not a "superseding" indictment), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). Unlike a superseding indictment that supersedes a pre-existing indictment to become the operative instrument on which the defendants in the case are tried, the indictment filed against the Indicted Defendants is entirely supplemental and does not replace any earlier indictment.

KL3 3125902.8

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 4

the prosecutor in selecting a given judge." *Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004). Random assignment serves to promote real and perceived impartiality in the administration of justice. *See Sherfey v. Johnson & Johnson*, No. 12-4162, 2012 WL 3550037, at *2 (E.D. Pa. Aug. 17, 2012) ("[T]he policies underpinning the system of random assignment encourage transparency, fairness, and avoiding the appearance of arbitrariness."); *Grutter v. Bollinger*, 16 F. Supp. 2d 797, 802 (E.D. Mich. 1998) ("A system of random assignment is purely objective and is not open to the criticism that business is being assigned to particular judges in accordance with any particular agenda. The subjective method employed in the present case was anything but random, and at a minimum the appearance of impropriety is manifest."); *see also Wheat v. United States*, 486 U.S. 153, 160 (1988) ("Federal courts have an independent interest in ensuring that . . . legal proceedings appear fair to all who observe them."); *United States v. Montecalvo*, 533 F.2d 1110, 1112 (9th Cir.) ("The appearance of fairness is as important as fairness-in-fact in maintaining confidence in the administration of justice in the minds of the public and of the accused."), *vacated on other grounds*, 545 F.2d 684 (9th Cir. 1976).

<div style="text-align:center">a.      <u>The Second Circuit Recently Criticized This Practice as Judge-Shopping</u></div>

The Second Circuit has been highly critical of the government proceeding by way of superseding indictment in circumstances like those present here. In fact, the Second Circuit questioned whether the government's circumvention of the random assignment process in connection with the *Steinberg* case (*United States v. Steinberg*, No. 12-cr-121 (RJS)) constituted inappropriate judge-shopping, even though that case was not before it on appeal.

In March 2013, the U.S. Attorney's Office charged Michael Steinberg by way of a superseding indictment. At that time, the four defendants previously named in the case had already been convicted (two by guilty plea and two by jury) and remained only to be sentenced. Steinberg objected to the government's use of a superseding indictment under such circumstances and sought to have his case randomly assigned via the criminal wheel, and that request was denied.

In connection with the appeal to the Second Circuit of Todd Newman and Anthony Chiasson, two of the defendants who had been charged in the original indictment and convicted after trial before Steinberg was indicted, the Circuit Court panel raised the judge-shopping issue *sua sponte* and strongly criticized the government for charging Steinberg by superseding indictment after the charges against all of the prior defendants in the case had been resolved. At oral argument in the *Newman/Chiasson* appeal, Judge Barrington D. Parker noted the number of separate and superseding charging instruments the government had sought during the case and said he "notice[d] a pattern of when you indict individuals and when you supersede," and he asked the government to "allay [his] concern" that "what the government did was move [the] indictments around until . . . they could get their main case before their preferred venue . . ." (*United States v. Newman*, Nos. 13-1837-cr, 12-1917-cr (2d. Cir. 2014),Transcript of Oral Argument, April 22, 2014 (transcribed by Kramer Levin from audio recording and attached hereto as Exhibit A) at 22). The government tried to explain that Steinberg's case "involved a lot

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 5

of overlapping witnesses, a lot of overlapping testimony, and [] common issues of law and fact," prompting Judge Ralph K. Winter to ask whether any effort was made to try Steinberg together with Newman and Chiasson. When the government said that a joint trial was not possible because of the timing of the charges, Judge Winter responded, "[w]here are the efficiencies then?" (*Id.* at 22-24). Judge Winter then noted the District's strict limitations on treating criminal cases as related and the controversy this issue caused in the 1951 case involving the Rosenbergs, and stated that "[n]ow you're trying – you're doing the same thing by superseding the indictments." (*Id.* at 25). After additional comments from the government about the practice of seeking a superseding indictment in such circumstances, Judge Parker reiterated his concern that the government was using superseding indictments to obtain a "tactical benefit." (*Id.* at 26-28).

Moreover, when it issued its opinion in *Newman/Chiasson*, the Second Circuit indicated that its concerns about judge-shopping remained unabated, stating in a footnote:

> We note that Judge Sullivan had an opportunity to address the issue in *Steinberg* only because the Government chose to charge [] Steinberg in the same criminal case as Newman and Chiasson by filing a superseding indictment. Notably, the Government superseded to add Steinberg on March 29, 2013, after the conclusion of the Newman trial, after Judge Sullivan refused to give the defendants' requested charge on scienter now at issue on this appeal, and at a time when there was no possibility of a joint trial with the Newman defendants.

773 F.3d 438, 450 n.5 (2d Cir. 2014).[4]

The Circuit's comments about the government's tactical use of a superseding indictment in *Steinberg* received a great deal of attention. *See, e.g.*, Hamblett, Mark, *Inside Trading Conviction Could Spur Rule Change*, N.Y.L.J (May 7, 2014); Neumeister, Larry, *Judge Grills Prosecutor About Insider Trading Conviction*, N.Y.L.J. (Apr. 24, 2014); Bach, Jonathan, *Insider Trading Case Raises Concerns About Judicial Assignment*, N.Y.L.J. (Sept. 30, 2013); Jacob Gershman, *Judge Kozinski Faults Prosecutors for 'Sleazy' Tactics in Steinberg Case*, WALL STREET JOURNAL (Nov. 20, 2015) (noting that Judge Kozinski expressed disapproval of "manipulative" judge-steering tactics in *Steinberg*); James B. Stewart, *Some Fear Fallout From Preet Bharara's Tension With Judges*, N.Y. TIMES (Apr. 16, 2015) (noting Second Circuit's criticism of what appeared to be "judge shopping" in *Steinberg*); Jeffrey Toobin, *The Showman: How U.S. Attorney Preet Bharara struck fear into Wall Street and Albany*, THE NEW YORKER (May 9, 2016) (discussing Second Circuit's opinion in *Newman*, including the footnote relating to *Steinberg*).

---

[4] The *Steinberg* conviction was subsequently vacated on consent following the *Newman* decision.

KL3 3125902.8

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 6

           b.      <u>Other Cases Condemning Efforts to Circumvent the Case Assignment</u>
                       <u>Process</u>

         The Second Circuit has frequently criticized efforts to circumvent the case assignment system – whether undertaken by a litigant or judge. In *Ligon v. City of New York*, 736 F.3d 118, 124-25 (2d Cir. 2013), citing the potential that a reasonable observer might question the presiding judge's impartiality after the judge arguably encouraged plaintiffs to commence a lawsuit and designate it as related to a case already assigned to her such that the later-filed case was also directed to her, the Second Circuit disqualified the judge from presiding over the cases, and remanded for the limited purpose of reassigning to a different judge "chosen randomly under the established practices of the District Court for the Southern District of New York." In *In re FCC*, 208 F.3d 137, 139-40 (2d Cir. 2000), the Second Circuit observed that "tactical abuse becomes possible if a lawyer's appearance can influence the recusal of judges known to be on a panel" and noted a desire to "preserve[] the neutral and random assignment of judges to cases," and then directed a law firm to withdraw from a case where it appeared that the firm had been retained for the purpose of creating a conflict of interest for one of the judges who had been assigned at random to preside over the matter.

         Other courts have similarly defended the random assignment procedure against efforts by the government to evade its application. In *United States v. Phillips*, 59 F. Supp. 2d 1178 (D. Utah 1999), the court denied the government's pretrial motion to reassign a randomly assigned criminal case to the judge who had presided over an earlier-filed case against the same defendants that was dismissed without prejudice on speedy trial grounds. The court noted that "the purpose of the rules relating to assignment is to ensure that cases are assigned at random to avoid the evils, real or perceived, of forum shopping." *Id.* at 1185; *see also id.* at 1180 ("[R]andom case assignment . . . has been well understood by both the bench and the bar to 'prevent judge shopping by any party, thereby enhancing public confidence in the assignment process.'" (quoting *United States v. Mavroules*, 798 F. Supp. 61, 61 (D. Mass. 1992))); *Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir. 1987) ("While a defendant has no right to any particular procedure for the selection of the judge – that being a matter of judicial administration committed to the sound discretion of the court – he is entitled to have that decision made in a manner free from bias or the desire to influence the outcome of the proceedings.").

         In *United States v. Hoey*, No. S3 11 Cr. 337 (PKC), 2014 WL 1091173 (S.D.N.Y. Mar. 12, 2014), the court noted that while the U.S. Attorney's Office can use superseding instruments to effectively circumvent the random assignment of criminal cases, the court maintains "powerful tools . . . to protect a defendant from an abuse of government power," including the "authority of a judge to order random reassignment when justice so dictates." *Id.* at *3. As an example, the *Hoey* court cited Judge Buchwald's reassignment of a superseding indictment in *United States v. Gaba*, No. 13 Cr. 150 (NRB/VSB) (S.D.N.Y. 2013) that charged

KL3 3125902.8

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 7

only a previously uncharged defendant in a case where all other defendants had already pled or been found guilty after trial and were awaiting sentencing.[5]

We respectfully submit that the government's actions in this case also implicate due process issues. *See United States v. Pearson*, 203 F.3d 1243, 1257 (10th Cir. 2000) ("In our view, if the assignment of a case to an individual judge should not be based on the desire to influence the outcome of the proceedings, then allowing a prosecutor to perform that task raises substantial due process concerns." (internal quotation marks omitted)). *See also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242-43 (1980) ("The Due Process Clause . . . preserves both the appearance and reality of fairness . . . . [J]ustice must satisfy the appearance of justice, and this stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." (internal quotation marks and citations omitted)); *Francolino*, 365 F.3d at 141 (in the habeas context, suggesting that judge-shopping causing prejudice to the defendant could warrant a new trial on due process grounds).

3. <u>Despite the Second Circuit's Warnings in *Newman* and the Other Decisions Above, the Government Continues to Selectively Use Superseding Indictments in a Manner That Circumvents the Assignment Process</u>

Notwithstanding this long line of precedent and the Second Circuit's recent statements in *Newman*, it appears the U.S. Attorney's Office has continued to circumvent the District's judge-selection process by strategically deciding whether to use a superseding indictment of a cooperator's information following the judicial assignment of that case. The well-known practice in this District of a cooperator's case being transferred for sentencing to the judge assigned to the indicted defendant's case where the cooperator testifies at a trial highlights that the government historically has not filed a superseding indictment to a cooperator's information and suggests that its decision to do so in this case and the cases cited below was undertaken for some perceived strategic benefit.

While we are not able to analyze all the recent criminal cases filed by the government in this District, from what we have been able to observe, it seems clear that the government's current strategy is to proceed by random assignment of separate indictments following a cooperator's plea to an information in some cases, and by superseding a cooperator's

---

[5] *Hoey* itself is distinguishable from this case because the superseding indictment that charged Hoey (1) also charged another previously charged defendant and (2) was filed while an earlier-filed indictment against that other defendant was open (*i.e.*, the other defendant had neither pled guilty nor proceeded to trial). Judge Castel made a point of noting that "[t]he sequencing of proceedings" was critical to his disposition of Hoey's motion for reassignment, *id.* at *1, and found the government's pursuit of a superseding indictment "facially proper" only because the superseder "added additional defendants to substantially identical charges in an existing indictment against another defendant," *id.* at *3.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 8

information in other cases. Obviously, that decision rests solely with the prosecutor's office and allows the government to unilaterally decide whether to proceed before the originally assigned judge or to seek a new judge.

In fact, we only need to look back at our own personal experiences in the recent insider trading cases handled by Kramer Levin as evidence of this practice. Last year, we represented Sanjay Valvani in a similar insider trading case involving the hedge fund Visium Asset Management brought by the same government attorneys who filed this case. On May 16, 2016, the government filed a notice of intent to file an information charging the primary cooperating witness against Mr. Valvani, Gordon Johnston, and that case was assigned to Judge Carter. (16-cr-406 (ALC)). On June 13, 2016, the government filed a sealed information against Mr. Johnston. On June 15, 2016, the same prosecutors brought charges by *separate* indictment against Sanjay Valvani, which was randomly assigned to Judge Stein.[6] Further evidencing the government's strategic use of superseding indictments, just weeks before the indictment and arrest of Mr. Valvani, that same office filed charges in an unrelated case against our client, William Walters, and proceeded by superseding the information charging the cooperating witness, Tom Davis, which had been assigned to Judge Castel and before whom the cooperator had already pled guilty.

This practice has not been limited to the *Valvani* and *Walters* cases. We have identified other recent insider trading and white collar cases where a cooperating witness has been charged and pled guilty and another defendant is subsequently indicted, and those cases also highlight the government's strategic use of superseding indictments in these circumstances. As demonstrated by the cases listed below (that we were able to analyze based on publicly available information), the government's unilateral decision to charge by separate indictment or superseding indictment allows the government alone to decide whether to proceed before the judge assigned to the underlying cooperator's case, or a different judge.

<u>Cases Initiated By Separate Indictment Randomly Assigned
Following Cooperator's Assigned Information and Guilty Plea</u>

- *US v. Kang and Kelley*, 16-cr-837 (JPO): On December 15, 2016, cooperating witness Gregg Schonhorn was charged by information and pled guilty before Judge Gardephe (*US v. Schonhorn*, 16-cr-828 (PGG)). On December 19, 2016, a separate indictment was unsealed charging defendants Navnoor Kang and Deborah Kelley, and that case was randomly assigned to Judge Oetken.

---

[6] Another potential cooperating witness, Christopher Plaford, pled guilty to a felony information that was assigned to Judge Abrams (16-cr-400 (RA)). The government also brought different charges against another Visium employee, Stefan Lumiere, initially by criminal complaint and then in a separate indictment randomly assigned to Judge Rakoff.

KL3 3125902.8

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 9

- *US v. Percoco et al.*, No. 16-cr-776 (VEC):  On September 20, 2016, cooperating witness Todd Howe was charged by information and pled guilty before Judge Richard M. Berman (*US v. Howe*, No. 16-cr-632 (RMB)).  On November 22, 2016, a separate indictment charging eight additional defendants – Joseph Percoco, Alain Kolayeros, Peter Galbraith Kelly, Steven Aiello, Joseph Gerardi, Louis Ciminelli, Michael Laipple, Kevin Schuler – was unsealed and randomly assigned to Judge Valerie E. Caproni.

- *US v. Bergstein and Wellner*, 16-cr-746 (PKC):  On January 6, 2016 cooperating witness Albert Hallac was charged by information and pled guilty before Judge Berman (*US v. Hallac*, 15-cr-512 (RMB)).  On November 9, 2016, a separate indictment was unsealed against defendants David Bergstein and Keith Wellner, and the case was randomly assigned to Judge Castel.

- *US v. Block*, No. 16-cr-595 (JPO):  On June 29, 2016, Lisa McAlister, a cooperating witness in an accounting fraud case against Brian Block, was charged in an information and pled guilty before Judge Alvin K. Hellerstein (*US v. McAlister*, No. 16-cr-653 (AKH)).  On September 7, 2016, defendant Block was indicted, and his case was randomly assigned to Judge J. Paul Oetken.

- *US v. Valvani*, 16-cr-412 (SHS) *and US v. Lumiere*, 16-cr-483 (JSR):  On May 16, 2016, the government filed a notice of intent to file an information against cooperating witness Christopher Plaford, and that case was assigned to Judge Ronnie Abrams (*US v. Plaford*, 16-cr-400 (RA)).  Also on May 16, the Government filed a notice of intent to file an information against cooperating witness Gordon Johnson, and that case was randomly assigned to Judge Andrew Carter (*US v. Johnston*, 16-cr-406 (ALC)).  On June 15, 2016 a separate indictment was unsealed against Mr. Valvani, and that case was randomly assigned to Judge Stein.  A separate indictment containing unrelated charges against Lumiere was filed on July 14, 2016 and that case was randomly assigned to Judge Rakoff.

- *US v. Leszczynski and Couchare*, 12-cr-923 (JFK):  On October 2, 2012, cooperating witness Henry Condron pled guilty to an information before Judge Berman (*US v. Condron*, 12-cr-768 (NRB)).  On December 11, 2012, defendants Leszczynski and Couchare were charged in a separate indictment, and the case was randomly assigned to Judge Keenan.

- *US. Kinnucan*, No. 12-cr-163 (DAB):  Donald Barnetson, a cooperating witness against John Kinnucan, pled guilty to an information on February 17, 2012, before Judge Kimba Wood (*US v. Barnetson*, 12-cr-157 (KMW)).  On February 21, 2012, Mr. Kinnucan was separately indicted, and the case was randomly assigned to Judge Batts.

KL3 3125902.8

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 10

> Cases Initiated by Superseding Indictment of
> Cooperator's Information Following Guilty Plea

- *US v. Davis and Walters*, 16-cr-338 (PKC):  On May 2, 2016, the government filed a Notice of Intent to File an Information as to cooperating witness Thomas Davis and that case was assigned to Judge Castel, and Davis pled guilty to an information on May 19, 2016.  Also on May 19, 2016, the government filed a superseding indictment, naming only defendant William Walters.

- *US v. Maciocio*, No. 16-cr-351 (LTS):  On May 11, 2016, the government filed a notice of intent to file an information against cooperating witness Michael Maciocio, and the case was randomly assigned to Judge Swain.  On May 20, 2016, Maciocio pled guilty.  On June 3, 2016, charges were brought against a new defendant, David Hobson, by superseding indictment.

- *US v. Cunniffe et al.*, 15-cr-287 (LTS):  On May 14, 2015, Richard Cunniffe pled guilty to an information before Judge Swain.  On July 15, 2015, the government filed a superseding indictment against two new defendants, Sean Stewart and Robert Stewart.

There is no question that these inconsistent charging decisions allow the government to unilaterally decide whether to proceed before the judge assigned to the cooperating witness's case, or have a different judge assigned for the indicted defendant.  And even putting aside whatever advantage the government may see in prosecuting a case before a certain judge as opposed to having it randomly assigned through the criminal wheel, the mere fact that the government has been able to effectively choose its judge in this manner is improper under the rules, unconstitutional and fundamentally unfair to the Indicted Defendants.  At minimum, it creates a strong appearance of impropriety and unfairness. *See Francolino*, 365 F.3d at 141 (2d Cir. 2004) (noting that "a criminal justice system in which the prosecutor alone is able to select the judge of his choice to preside at trial, even in limited types of cases, raises serious concerns about the appearance of partiality, irrespective of the motives of the prosecutor in selecting a given judge").

Finally, it bears noting that even the rationales previously offered by the government to the Second Circuit to try to defend its use of superseding indictments do not apply to the circumstances present here.  When asked to explain why the government charged Steinberg by superseding indictment rather than a randomly-assigned separate indictment, the government said that "[t]here were a whole host of reasons as to why it made sense to supersede Mr. Steinberg into the existing case before Judge Sullivan, not the least of which was judicial efficiencies, in that . . . Judge Sullivan . . . had presided over not only [of] course [] the pretrial, enormous amount of pretrial litigation, but of course a six-week trial in which the issues were the same."  While "judicial efficiency" is not grounds to assign a criminal case to a particular judge under the relevant rules of this District, there, of course, is no "judicial efficiencies" argument

KL3 3125902.8

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

May 30, 2017
Page 11

here to support the government unilaterally preventing the Indicted Defendants from having their case randomly assigned since there have been no proceedings before this Court in the underlying case.

<div align="center">* * * * * *</div>

        For all these reasons, we respectfully request that this case be placed in the wheel for random assignment in accordance with the District's procedures set forth in Rule 6(b).

        Thank you for your consideration.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Barry H. Berke
Barry H. Berke
Dani R. James
Kramer Levin Naftalis & Frankel LLP
*Attorneys for Theodore Huber*

/s/ David Esseks
David Esseks
Eugene Ingoglia
Allen & Overy LLP
*Attorneys for Robert Olan*

</div>

Encl.

cc:    Ian McGinley, Josh Naftalis and Damian Williams
       Assistant United States Attorneys
       (by email)

KL3 3125902.8